UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRANCISCO JAVIER GONZALEZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:23-cv-00886-CDB (SS)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. §405(g)

(Doc. 17)

Plaintiff Francisco Javier Gonzalez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 12, "AR") and the parties' briefs (Docs. 17, 19, 20), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[1]

## I. BACKGROUND

### A. Administrative Proceedings and ALJ's Decision

On December 14, 2016, Plaintiff filed applications for disability and disability insurance benefits with an alleged disability onset date of September 7, 2015. (AR 15). Plaintiff's claim was

[1] On November 15, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned. (Doc. 15).

initially denied on February 28, 2017, and again upon reconsideration on June 9, 2017. *Id.* Plaintiff requested a hearing before an Administrative Law Judge on July 19, 2017. *Id.* Vicky Ruth, the Administrative Law Judge ("ALJ"), held an online video hearing on March 15, 2019, during which Plaintiff, with representation by attorneys Melissa Proudian and Amanda Foss, and impartial vocational expert Denise A. Weaver testified. *Id.* The ALJ issued an unfavorable decision on May 1, 2019, finding Plaintiff was not disabled. (AR 12, 17-27). The Appeals Council denied Plaintiff's request for review on February 19, 2020, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a). (AR 17-27). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 7, 2015, the alleged onset date, through his date last insured of March 31, 2018. (AR 17).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: rheumatoid arthritis, fibromyalgia, asthma, sciatica, depression, and anxiety. (AR 17-18).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18). The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2] Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 19-20). The ALJ also found that the evidence in this case fails to establish the presence of "paragraph

---

[2] The paragraph B criteria are not at issue in Plaintiff's challenge here.

C" criteria.[3] (AR 20).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) except for the following non-exertional limitations:

> [Plaintiff] can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crouch, and crawl; he should have avoided concentrated exposure to extreme cold, excessive vibration, and pulmonary irritants such as fumes, odors, dusts, and gases; he should have avoided concentrated exposure to workplace hazards such as dangerous, moving-factory-type machinery and unprotected heights; he is limited to simple, routine tasks and only occasional interaction with the public.

(AR 20).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted she followed the two-step process as set forth in 20 C.F.R. § 404.1529, SSR 16-3p, and 20 C.F.R. § 404.1527. *Id.* The ALJ summarized Plaintiff's hearing testimony:

> [Plaintiff] alleged that his rheumatoid arthritis ("RA"), fibromyalgia, asthma, sciatica, depression, and anxiety were so severe that he was unable to perform basic work activities; he reported that the pain, swelling, and stiffness in his back and joints prevented him from standing or walking for very long; that his impairments caused pain and stiffness in his hands that made grasping and manipulating objects difficult; that the pain from his RA and fibromyalgia flare-ups, as well as his depression and anxiety made concentrating on tasks difficult and made him irritable around people; that he had to take sleep medications to sleep through the night but that when his depression would worsen, he would take multiple naps per day; and that his wife had to do daily chores like carry groceries when he had flare-ups and was in pain.

(AR 21) (citing Ex. 4E; Hearing Testimony).

Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of symptoms are inconsistent with the record. (AR 21). The ALJ acknowledged that although Plaintiff's allegations of the severity and persistence of his symptoms are not fully consistent with the record, she found that the symptoms still resulted in some reasonable limitations in Plaintiff's ability to perform basic work activities. (AR 22). The ALJ

[3] Paragraph C is not at issue in Plaintiff's challenge here.

noted that Plaintiff was limited to sedentary work, accounting for Plaintiff's hand pain, swelling, and stiffness related to his RA and fibromyalgia. *Id.* Further, the RFC accounted for movement, exertional, and environmental limitations to account for the hand pain, swelling, and stiffness. *Id.*

The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment history and notes, activities of daily living ("ADLs"), prior administrative medical findings, and "any precipitating and aggravating factors" of Plaintiff's symptoms, determined that the record does not support limitations that would prevent him from working within the RFC. (AR 21-25). The ALJ concluded that the assessed RFC is supported by the evidence and that the RFC is consistent with the medical record as a whole. (AR 25).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work and that transferability of job skills is not an issue. (AR 25) (citing 20 C.F.R. § 404.1565). The ALJ found that Plaintiff was a younger individual age on the date last insured and had at least a high school education. *Id.* (citing 20 C.F.R. §§ 404.1563, 404.5164).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 25-26). The ALJ cited patcher, table worker, and stuffer based on the testimony of the vocational expert. (AR 26). The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from September 7, 2015, the alleged disability onset date, through March 31, 2018, the date last insured. (AR 27-27).

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. <u>LEGAL STANDARD</u>

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant

is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III. <u>ISSUES AND ANALYSIS</u>[4]

Plaintiff seeks judicial review of the Commissioner's final decision denying his application and raises two issues:

1. Whether the ALJ failed to properly evaluate the medical opinion of record in accordance with the prevailing rules and regulations; and
2. Whether the ALJ erred by failing to provide a clear and convincing reason supported by substantial evidence to discount Plaintiff's subjective pain testimony.

*See* (Doc. 17 at 16-23).

### A. Whether the ALJ Failed to Properly Evaluate the Medical Opinion of Record

#### 1. <u>Parties' Contentions</u>

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion of his treating primary care provider, Dr. Wadhwani, in rejecting the opinion without providing specific and legitimate reasons supported by substantial evidence. (Doc. 17 at 18). Plaintiff argues the ALJ did not address records concerning Plaintiff's RA and fibromyalgia pain affecting his ambulation and explain why this evidence was rejected. *Id.* at 18-19. Plaintiff further argues that the ALJ's reasoning in rejecting the opinion on the basis that it was inconsistent with the medical evidence is legally insufficient as the ALJ did not address probative evidence supporting the opinion's limitations concerning Plaintiff's ability to use his hands and arms. *Id.* at 19-20. Separately, Plaintiff argues that the ALJ's rejection of the opinion in relying on a single treatment note was error. *Id.* at 21.

---

[4] Filings are referenced herein according to the associated CM/ECF-designated pagination.

Defendant contends that the ALJ provided legally valid reasons supported by substantial evidence to discount Dr. Wadhwani's opinion concerning Plaintiff's ability to stand and walk and use his hands and arms. (Doc. 19 at 6). Defendant argues the ALJ properly discounted the opinion in finding the objective medical evidence and Dr. Wadhwani's own treatment records did not corroborate his conclusions, because the opinions provided little to no objective medical evidence to support the limitations, and the opinion was inconsistent with Plaintiff's treatment. *Id.* at 6-7.

In reply, Plaintiff contends that Defendant is "silent as to Plaintiff's argument that the ALJ failed to address or explain medical evidence which undermine the reasons the ALJ proffered to reject" the opinion of his treating physician Dr. Wadhwani. (Doc. 20 at 2). Plaintiff argues the ALJ failed to meet his burden by ignoring conflicting medical evidence undermining his conclusions. *Id.* at 3.

2. Governing Authority

For Social Security disability cases filed before March 27, 2017, the weight to be given to medical opinions depends in part on whether the opinions are proffered by treating, examining, or non-examining health professionals.[5] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the [plaintiff]…" as a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Lester*, 81 F.3d at 830; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990).

Whereas the uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons supported by substantial evidence in the record, the same opinion that is controverted by another doctor may be rejected for the lesser "specific and legitimate reasons" standard. *Lester*, 81 F.3d at 831. The "specific and legitimate reasons" standard requires the ALJ to set out a detailed and thorough summary of the facts and conflicting clinical evidence,

[5] Effective March 27, 2017, Revisions to Rules Regarding the Evaluation of Medical Evidence went into effect. *Melynda G v. Kijakazi*, No. 5:20-cv-00890-JC, 2022 WL 911585, at *4 n.7 (C.D. Cal. Mar. 29, 2022). Because Plaintiff's application was filed prior to March 27, 2017, 20 C.F.R. § 404.1527 applies, not 20 C.F.R. § 404.1520c.

state his/her interpretation of the evidence, and make a finding. *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Absent specific and legitimate reasons, the ALJ must defer to the opinion of a treating or examining physician. *See Lester*, 81 F.3d at 830-31.

An ALJ may reject the opinions of a physician when they are inconsistent with the overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). However, to do so, "[t]he ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence. *Tackett*, 180 F.3d at 1102; *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

3. <u>Dr. Wadhwani's Opinion</u>

On January 17, 2019, Dr. Suneel H. Wadhwani drafted a physical medical source statement following his evaluation of Plaintiff. (AR 554-58). In the physical medical source statement, Dr. Wadhwani noted that Plaintiff had diagnoses of RA, fibromyalgia, and depression with poor prognosis, and symptoms including stiff joints and hand pain. (AR 555). Dr. Wadhwani characterized Plaintiff as having severe pain rated "8/10" and swollen joints. *Id.* He noted that Plaintiff's impairments can be expected to last at least 12 months, that emotional factors contribute to the severity of Plaintiff's symptoms and limitations, and Plaintiff's depression and anxiety affect his physical condition. *Id.* He noted that Plaintiff: can walk two city blocks without rest or severe pain; can sit and stand less than two hours total in a workday while sitting and standing for only one hour at a time; and needs a job that permits shifting positions at will, includes periods of walking around for about ten minutes every hour, and includes six unscheduled breaks of 30 minutes each based on muscle weakness and pain. (AR 556). He further noted that Plaintiff: can frequently carry less than ten pounds, occasionally ten to 20 pounds, and rarely 50 pounds; can occasionally twist, stoop (bend), crouch/squat, and climb stairs, and rarely climb ladders; has significant limitations with reaching, handling, or fingering, including limiting the use of his hands

for grasping, turning and twisting objects to 15 percent of the workday, fingering required for fine manipulations to 20 percent of the workday, reaching with arms in front of the body for 30 percent of the workday, and reaching with arms overhead 15 percent of the workday; is 25% or more likely to be off task; is capable of moderate stress and normal work; that Plaintiff is likely to be absent from work more than four days per month as a result of his impairments; and that his impairments are reasonably consistent with the limitations described in the evaluation. (AR 557-558).

4. Analysis

First, although the ALJ noted that Dr. Wadhwani is the treating physician of Plaintiff, there is no record evidence suggesting she considered factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (citing 20 § 404.1527(c)(2)-(6)). "This failure alone constitutes reversible legal error." *Id.*; *e.g., Lee v. Saul*, No. 2:18-cv-2777 DB, 2020 WL 1451559, at *5 (E.D. Cal. Mar. 25, 2020). As Plaintiff notes, and the ALJ failed to consider, Dr. Wadhwani managed Plaintiff's care as his primary care provider since 2012. (Doc. 17 at 21); *see* (AR 555) (frequency and length of contact since 2012); *see also Lee*, 2020 WL 1451559, at *5 ("Here, not only did the ALJ fail to discuss [the § 404.1527(c)] factors, but Dr. Palmer had seen plaintiff for 51 sessions prior to rendering the treating opinion.").

The ALJ explained she gave little weight to the opinion of treating physician Dr. Wadhwani because the opinion was inconsistent with the medical evidence of record. (AR 24) (citing Exs. 5F, 11F, 12F). The ALJ noted Dr. Wadhwani's opinion was inconsistent where he opined that Plaintiff could lift and carry 20 pounds despite assessing "significant bilateral manipulative limitations," and that Dr. Wadhwani found Plaintiff would be off-task 25% or more per workday while finding he was capable of handling moderate stress of normal work. *Id.* The ALJ further noted Dr. Wadhwani's assessments that Plaintiff would miss more than four days of work due to his symptoms and that Plaintiff had some severe restrictions in all paragraph B domains other than understanding and memory that would have precluded performance for 15% or more of the workday. *Id.* (citing Exs. 11F, 12F).

Relevant to Plaintiff's specific challenge here, the ALJ found inconsistent Dr. Wadhwani's

opinion that Plaintiff could stand and walk for less than two hours per workday and that he needed six breaks a day of 30 minutes each while opining that Plaintiff did not require a cane for assistance. For this proposition, the ALJ cited only Dr. Wadhwani's January 17, 2019, medical source statement to demonstrate the inconsistency of the opinion without providing citation to other evidence of record regarding any inconsistency. Nor did the ALJ explain why Dr. Wadhwani's finding that Plaintiff did not need a cane for assistance in walking or standing was inconsistent with other evidence of record regarding Plaintiff's ability to stand or walk. Therefore, the ALJ did not provide a specific and legitimate reason to reject Dr. Wadhwani's opinion based on limitations regarding Plaintiff's ability to stand or walk. *Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For the same reasons, the Court finds that the ALJ's barebone contention that Plaintiff's record shows "he was compliant with his medication and infusions, which generally improved and controlled [Plaintiff's] symptoms" (AR 24) does not demonstrate any inconsistency approaching the "specific and legitimate reasons" standard necessary to support the discounting of a treating physician's opinion. *See Reddick*, 157 F.3d at 725.

However, the ALJ provided a specific and legitimate reason to reject Dr. Wadhwani's opinion concerning Plaintiff's manipulative limitations. *Magallanes*, 881 F.2d 751-55. The ALJ noted that the record reflects Plaintiff's pain symptoms from his swelling, joint pain, tender points, stiffness, and pain with range of motion in his hands due to RA and fibromyalgia flare-ups limited Plaintiff to only lifting up to ten pounds occasionally and less than ten pounds frequently but did not require additional manipulative limitations with the upper extremities. (AR 24). The Court's review of the exhibits cited by the ALJ reveals that that evidence adequately supports the ALJ's interpretation and assessment that while Plaintiff indeed experienced pain related to his RA, fibromyalgia, joint issues, and stiffness and swelling in his hands, he was not assessed significant bilateral manipulative limitations.

Plaintiff's progress treatment note from September 23, 2015, indicates that Plaintiff's hands were tender and his wrists were "uncomfortable with abduction" and acknowledges Plaintiff "works as a farm mechanic causing increase[d] pain in arms hands and back" but assessed no

related preventative measures and no manipulative limitations. (AR 281-282). His treatment note from January 5, 2016, acknowledges Plaintiff complained of morning stiffness, "tennis elbow," joint pain in both wrists and shoulders and joint swelling and that he had "occasional thickening in his wrists and knees" and Plaintiff was advised to work on stretches regarding his elbow issues. (AR 283-284). `Plaintiff's progress treatment note from February 4, 2016, indicates that upon examination, his hands had "[g]ood grip strength" and no synovitis or tenderness in his wrists, with normal range of motion in his shoulders and that Plaintiff "is not using elbow straps as instructed" regarding his elbow issues. (AR 285, 286). Plaintiff's follow-up treatment notes reveal similar examination findings as to his hands, wrists, elbows, and shoulder functioning and ROM with occasional tenderness and stiffness. *See* (AR 291, 293, 295, 299, 327 [9/23/2016 progress note noting minimal joint pain and variable joint swelling], 329 [11/22/2016 progress note noting good hand grip strength, non-tender wrists, tender elbows], 332 [3/22/2017 progress note noting bilateral wrist tender], 334 [4/19/2017 progress note noting tender finger but no swelling]).

Plaintiff contends the ALJ's reliance on December 29, 2017, progress note of Dr. Charles H. Boniske supports Dr. Wadhwani's limitations concerning Plaintiff's use of his hands and arms. (AR 550). Although the progress note acknowledges that upon examination, Plaintiff had tenderness with palpitation in his thumbs and had mild thickening of his hands with decreased grip strength, the note does not assess any bilaterial manipulative limitations and is therefore consistent with the ALJ's assessment of the evidence that Plaintiff indeed experienced pain but was not assessed any manipulative limitations by his providers. Plaintiff's citation to other record evidence contending that the ALJ failed to address other probative evidence supporting Dr. Wadhwani's opinion does not demonstrate the ALJ's reasoning was erroneous because those findings likewise acknowledge Plaintiff's occasional pain symptoms but do not assess or recommend and manipulative limitations. *See* (Doc. 17 at 20) (citing AR 281-282, 299-300, 331-333, 550-551, 545-547).

Therefore, the ALJ sufficiently relied on evidentiary support for his interpretation of the medical evidence, finding that Dr. Wadhwani's assessment of significant bilateral manipulative limitations regarding Plaintiff's use of his arms and hands was inconsistent with the record. The

ALJ's conclusion in this regard constitutes a specific and legitimate reason for rejecting this portion of Dr. Wadhwani's opinion. *Tackett*, 180 F.3d at 1102; *Cotton*, 799 F.2d at 1408; *Morgan*, 169 F.3d at 602-03; *cf. Jones v. Saul,* No. 2:18-cv-1094-EFB, 2019 WL 4747702, at *4 (E.D. Cal. Sept. 30, 2019) (finding the ALJ erred when he "merely offered his conclusion" that the physician's opinion was inconsistent with other evidence and failed to either identify specific objective findings from his summary of the record or provide "an explanation of how such evidence undermines [the physician's] opinion.").

An ALJ unquestionably may reject a physicians' opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the plaintiff] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fisher v. Astrue*, 429 Fed. Appx. 649, 652 (9th Cir. 2011) (concluding that ALJ provided specific and legitimate reasons for rejecting a physician's opinion where the assessment was based on the subjective complaints and limitations identified by the physician that conflicted with the plaintiff's daily activities). The Ninth Circuit requires the ALJ to describe the daily activities, note whether the plaintiff performs them alone or with assistance, and evaluate whether the nature of each activity "comprise[s] a 'substantial' portion of [the plaintiff's] day, or [is] 'transferable' to a work environment." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

Here, the ALJ noted that Plaintiff's daily activities in driving, shopping, cooking simple meals, and grocery shopping required manipulative maneuvers such that the activities "supports no manipulative limitations[.]" (AR 24) (citing Exs. 2F, 3F, 4F, 5F, 9F, 10F). Although the ALJ plausibly assessed that Dr. Wadhwani's opinion regarding manipulative limitations may be inconsistent with Plaintiff's activities of daily living, the ALJ does not evaluate whether any of these activities are transferrable to a work environment such that Plaintiff's ability to carry out these activities contradicts Plaintiff's symptomology testimony. *Ghanim*, 763 F.3d at 1165; *see Trevizo*, 871 F.3d at 676 (finding error where the ALJ failed adequately to evaluated the claimant's ADLs, identify any other tasks that might undermine her claimed limitations, or inquire into whether the claimant completed activities alone or with the help of others). Therefore, by failing to meaningfully evaluate Plaintiff's activities of daily living, such activities cannot constitute a

specific and legitimate reason to discount Dr. Wadhwani's.

In sum, although the ALJ provided a specific and legitimate reason to reject Dr. Wadhwani's opinion concerning manipulative limitations, the ALJ failed in her obligation to consider the nature and extent of Dr. Wadhwani's treatment relationship with Plaintiff and failed to articulate specific and legitimate reasons to discount Dr. Wadhwani's opinion regarding the assessed standing/walking restriction. These failure constitute reversible legal error. *See Trevizo*, 871 F.3d at 676; *Reddick*, 157 F.3d at 725. Defendant does not argue that these errors were harmless.

**B. Whether the ALJ Erred by Failing to Provide a Clear and Convincing Reason Supported by Substantial Evidence to Discount Plaintiff's Subjective Pain Testimony**

1. Parties' Contentions

Plaintiff contends the ALJ failed to provide a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony. (Doc. 17 at 22). Plaintiff argues the ALJ impermissibly found Plaintiff's testimony inconsistent in relying on a single examination note showing his hands had good grip strength with no tenderness or synovitis in the wrists. *Id.*

Defendant argues that the ALJ properly found the objective medical evidence did not corroborate Plaintiff's subjective pain testimony as the ALJ acknowledged Plaintiff's complaints arising from his RA and fibromyalgia while finding the objective evidence contradicted his statements of alleged pain. (Doc. 19 at 9). Defendant contends the ALJ noted Plaintiff "generally demonstrated good grip strength and normal range of motion with no trigger points." *Id*. (citing AR 599, 602).

In reply, Plaintiff argues that the record supports Plaintiff's limitations based on treatment records demonstrating his pain in his joints and limited range of motion in his hands, wrists, shoulders, knees, hips, and low back due to his RA and fibromyalgia, which the ALJ failed to discuss or explain. (Doc. 20 at 5).

2. Governing Authority

"In step two of the disability determination, an ALJ must determine whether the [plaintiff]

has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

The ALJ is responsible for determining credibility,[6] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment

---

[6] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility" assessment when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See*, *e.g.*, *Ferguson v. O'Malley*, 95 F.4th 1194, 1204 (9th Cir. 2024).

which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen*, 80 F.3d at 1282.

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281). *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1) ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d

at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). Accord *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g*., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's]

complaints – '[g]eneral findings are insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

3. Analysis

The ALJ found that Plaintiff's severe impairments—RA, fibromyalgia, asthma, sciatica, depression, and anxiety—significantly limit him from performing basic work activities. (AR 17). The ALJ summarized Plaintiff's hearing testimony that his MDIs "were so severe that he was unable to perform basic work activities" as his symptoms of pain, swelling, and stiffness in his back and joints prevented him from standing or walking "for very long" and that pain and stiffness in his hands made grasping and manipulating objects difficult. (AR 21) (citing Ex. 4E; Hearing Testimony). Plaintiff further testified that his wife had to do daily chores like carry groceries when he had flare-ups and was in pain. *Id.*

After finding that Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the record. *Id.*; *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction ... before [identifying] what parts of the claimant's testimony were not credible and why.").

The ALJ discounted Plaintiff's subjective testimony because it was not supported by and is inconsistent with the objective medical evidence, Plaintiff's impairments were improved with treatment, and Plaintiff's activities of daily living demonstrated he was capable of performing sedentary work as limited in the RFC. (AR 21-25).

///

*a. The objective medical evidence was not inconsistent with Plaintiff's testimony.*

Plaintiff contends the ALJ failed to provide a clear and convincing reason to discount his pain testimony stemming from his RA and fibromyalgia. *See* (Doc. 17 at 22-23).

The ALJ found that the record medical evidence did not support the extent of Plaintiff's subjective complaints of pain. (AR 21). The ALJ acknowledged that Plaintiff's RA and fibromyalgia examination notes reflected he had some trigger points, tenderness, and stiffness along his thoracic, cervical, and lumbar spines but noted there was no imaging of Plaintiff's spine in the record to support his periodic complaints of low back pain. *Id.* (citing Exs. 2F, 3F, 9F). As to Plaintiff's allegations of pain based on his RA and fibromyalgia, the ALJ noted Plaintiff received injections and was hospitalized for three days in March 2016 to drain an abscess in his right knee but that follow-up records showed the wound progressively healed after his release, and the record lacked any nerve conduction studies or other objective medical imaging regarding Plaintiff's alleged impairments. *Id.* (citing Exs. 2F, 3F, 7F).

The ALJ thereafter pointed to Plaintiff's treatment records to show while Plaintiff had a history of periodic worsening of symptoms related to his RA and fibromyalgia "with an increase in trigger and tender points, swelling, joint pain and stiffness, tenderness, back pain, and some range of motion limitations[,]" his knee pain was attributed to increased infections caused by one of Plaintiff's RA medications (Humira), and Plaintiff's worsening symptoms were treated by his physicians' adjustment of his medications "which generally led to a decrease in symptoms[.]" (AR 21-22) (citing Exs. 2-5F; 7F; 9F; 10F). The ALJ noted that Plaintiff's RA was "under excellent control" and that he was "much better" after he was prescribed Rituximab in April 2017. (AR 22) (citing Ex. 4F). The ALJ pointed to other treatments that conservatively managed Plaintiff's symptoms, including undergoing periodic infusions every eight to nine months that "generally improved" his condition until "symptoms began to return." *Id.* (citing Exs. 5F, 10F). The ALJ noted there were no records of emergency hospitalizations, other invasive procedures, or escalating treatment modalities typical of a disabled individual. *Id.* The ALJ also noted Plaintiff's record generally showed normal findings as to ambulation and no need for an assistive device. *Id.* The

ALJ acknowledged that although Plaintiff's symptoms were inconsistent with the record, they "still resulted in some reasonable limitations" as set forth in the RFC. *Id.*

Here, the ALJ's reliance on an absence of certain evidence, such as imaging and nerve conduction studies or other medical imaging, does not persuasively demonstrate that Plaintiff's pain allegations are unsupported by the objective medical evidence. Thus, "[t]he fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan,* 260 F.3d at 1049; *see Annette M. M. v. Saul*, No. 5:20-cv-00360-AFM, 2020 WL 7773894, at *3 (C.D. Cal. Dec. 30, 2020) ("although the ALJ used the word 'inconsistent,' the decision did not cite medical evidence that affirmatively contradicted Petitioner's subjective complaints. … Instead, the ALJ's discussion focuses on the lack of objective evidence and points to 'mild' and 'unremarkable' findings from examinations and imaging."); accord *Maria D. G. v. Bisignano*, No. No. 5:25-cv-01189-KES, 2026 WL 181212, at *3 (C.D. Cal. Jan. 22, 2026) ("a lack of objective support is different from inconsistent symptom reporting").

Moreover, Plaintiff's treatment records do not demonstrate any inconsistency in Plaintiff's alleged limitations as it is conceivable he experiences pain and discomfort from his physical impairments related to his RA and fibromyalgia notwithstanding he received varying courses of treatment since he began seeking treatment in September 2015. *See, e.g., Denise M. v. O'Malley*, No. 3:23-cv-00155-SLG, 2024 WL 3159485, *10-12 (D. Al. June 25, 2024) ("Plaintiff's pain and symptoms did not significantly improve in a way that contradicts her testimony. … Consequently, the ALJ failed to provide the Court with clear and convincing reasons for discounting Plaintiff's symptom testimony."). That Plaintiff at times experienced pain and stiffness in his hands, making it difficult to grasp and manipulate objects notwithstanding Plaintiff took intravenous medications such as Rituximab and had those medications cycled based on his symptoms' varying severity does not make his testimony inconsistent. *See* (AR 21, 325, 329-330, 335).

Further, the ALJ's determination that Plaintiff's symptoms improved with merely conservative treatment is erroneous. *See Tagle v. Astrue*, No. CV-11-7093 SP, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative,

epidural and trigger point injections are not."); *see also Garrison*, 759 F.3d at 1015 n.20 ("[It is] doubt[ful] that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment[.]"). Accord, *Davis v. Saul*, No. 20-cv-814-BLM, 2021 WL 2333256, *6 (S.D. Cal. June 7, 2021) ("Plaintiff's use of prescribed narcotic medication in conjunction with a caudal epidural steroid injection . . . is not conservative treatment."); *Madrigal v. Berryhill*, No. CV 17–824–PLA, 2017 WL 5633028, at *6 (C.D. Cal. Nov. 21, 2017) ("[P]laintiff has been prescribed strong prescription pain medications, including the narcotic medication Norco, has received spinal injections, and has been referred for a lap band surgery consultation, treatment that is not necessarily conservative."). Therefore, the ALJ did not show Plaintiff's medical treatment was conservative such that it renders his testimony inconsistent.

Because, at most, the ALJ properly found that the objective medical evidence does not fully support Plaintiff's symptomology testimony, this finding alone is not a sufficient reason to support the ALJ's overall credibility determination; instead, the ALJ must provide additional reasons to discount Plaintiff's testimony that is supported by substantial evidence. *See, e.g., Isis A. v. Saul*, No. 18-cv-01728-W-MSB, 2019 WL 3554969, at *7 (S.D. Cal. Aug. 5, 2019) ("The ALJ cited to objective medical evidence consisting of … clinical findings[.] When the ALJ discussed that specific evidence, he did not articulate even a single inconsistency, but he stated … in various ways that the evidence did not support Plaintiff's testimony.); *Zinobia v. Berryhill*, Case No. 2:17-cv-08427-MAA, 2019 WL 13032522, at *6 (C.D. Cal. Jan. 29, 2019) ("Even assuming this reason is supported by the record … [s]tanding alone, a reason based on lack of objective medical evidence is insufficient to support the assignment of little weight to a [Plaintiff's] subjective symptom allegations.") (citing *inter alia Burch*, 400 F.3d at 681).

*b. Plaintiff's activities of daily living do not provide a clear and convincing reason to reject Plaintiff's symptomology testimony.*

An ALJ may reject a plaintiff's subjective symptom testimony if it is inconsistent with the plaintiff's activities of daily living. *Tommasetti*, 533 F.3d at 1039. Specifically, in discounting a plaintiff's credibility, an ALJ properly may rely on ADLs: (1) when daily activities demonstrate the plaintiff has transferable work skills, and (2) when daily activities contradict the plaintiff's

testimony as to the degree of functional limitation. *Orn*, 495 F.3d at 639. However, "disability [plaintiffs] should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). "The mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]" *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan*, 260 F.3d at 1050).

Here, the ALJ considered and relied on Plaintiff's reported ADLs of driving, cooking, personal hygiene, chores, and shopping for groceries, noting that these activities all required some degree of movement and exertion, in concluding that Plaintiff can perform work as limited in the RFC. (AR 23). However, in rejecting Plaintiff's testimony, the ALJ fails to adequately explain how Plaintiff's ADLs conflict with his subjective complaints of pain or demonstrate an ability to function in the workplace. That he at times is able to drive, shop, and do personal care activities and chores does not undermine Plaintiff's claim he is unable to sustain work without experiencing discomfort or pain. *See Webb*, 433 F.3d at 688; *Orn*, 495 F.3d at 639. Nor does the ALJ show how these occasional activities equate to transferable work skills. *See, e.g., Wilson v. Comm'r of Soc. Sec. Admin.*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (finding a plaintiff's occasional driving does not render him able to work); *Costa v. Berryhill*, 700 Fed. Appx. 651, 653 (9th Cir. 2017) ("The ability to accomplish daily tasks irregularly does not necessarily equate with an ability to work."). Thus, the undersigned cannot ascertain which of Plaintiff's symptomology testimony the ALJ rejected based on ADL evidence, or why. *See, e.g., Isis A.*, 2019 WL 3554969, at *6 ("Because the ALJ did not identify any actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain which of Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence.") (citing *inter alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).

For these reasons, the ALJ did not identify a specific, clear, and convincing reason for discrediting Plaintiff's symptom testimony when she failed to explain how those ADLs either

contradicted Plaintiff's testimony or equaled transferable work skills.

* * * * *

In sum, the ALJ failed to provide any clear and convincing reason supported by substantial evidence in discounting Plaintiff's subjective symptomology testimony. While an ALJ's error may be harmless where she provides valid reasons for disbelieving a plaintiff's testimony in addition to invalid reasons (*Molina*, 674 F.3d at 1115 (citing cases)), here, Defendant does not argue harmlessness and the Court finds the ALJ provided no valid reasons for rejecting Plaintiff's symptomology testimony. Accordingly, the error is not harmless.

**C. Remedy**

Plaintiff requests this case be remanded for further proceedings and a new decision. (Doc. 17 at 23). "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis omitted) (9th Cir. 2004).

In this case, the ALJ erred by failing to consider the nature and extent of the treatment relationship between Dr. Wadhwani and Plaintiff, failing to identify specific and legitimate reasons to reject Dr. Wadhwani's opinion concerning standing/walking restrictions, and failing to provide a clear and convincing reason supported by substantial evidence to discount Plaintiff's subjective pain allegations. Given that these errors are not harmless, the Court concludes that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

## IV. CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is GRANTED;
2. The ALJ's decision (Doc. 12) is REVERSED;
3. This matter is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and

4. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Francisco Javier Gonzalez and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **August 18, 2026**

UNITED STATES MAGISTRATE JUDGE